OCTOBER AND NOVEMBER TERM, 1881, No. 41.

# Woodland Oil Co. *versus* Lawrence.

1. It is no defence to an action upon a bond for the surplus money given by the purchaser of unseated lands at a treasurer's sale, that after the sale and before the execution of the bond the owner removed timber from the lands.

2. Until the execution of the bond the owners had the title and the right to the full enjoyment of the land and the timber.

CERTIORARI SUR APPEAL from the decree of the Court of Common Pleas of *Forest County*, discharging a rule to show cause why judgment should not be opened.

Judgment was entered to September Term, 1880, No. 16,

by William Lawrence, Treasurer, for use of John and Thomas Wilkinson, against the Woodland Oil Co., Limited, upon a surplus bond for $1315.

From the depositions taken upon the rule to open the judgment the following facts appeared :

On the 10th of June, 1878, the Woodland Oil Co., Limited, purchased from William Lawrence, treasurer of Forest County, at the treasurer's sales of unseated lands, for the arrearages of taxes for the year 1876 and 1877, a certain . tract of unseated land in Kingsley Township, Forest County, of 420 acres, belonging to John and Thomas Wilkinson. The taxes and costs of sale due upon the land were $169.50, and the bid was $1484.50. The taxes and costs, $169.50, were duly paid to the treasurer; and a bond for the surplus of the bid, to wit—for $1314, dated March 26th, 1880,—was given to the treasurer, and by him filed in the prothonotary's office, on 29th of May, 1880. A deed from the treasurer, dated June 10th, 1878, acknowledged in open Court, September 23d, 1878, for the land, was duly delivered to said Woodland Oil Co., Limited. There was no redemption from this sale. After the time for redemption expired, John and Thomas Wilkinson, on the 22d of June, 1880, gave notice to the Oil Company of a demand for the sum of money named in the surplus bond, and caused judgment to be entered on it, on the 28th of June, 1880, for the amount thereof, $1350. At the time of the treasurer's sale of this land to the Oil Company there was standing thereon a quantity of pine timber. Between the time of the date of the treasurer's sale and the entry of the bond for the surplus money, the Wilkinsons, as owners, cut and removed 11,500 feet of timber from the land.

The defendant claimed that it ought to be let into a defence to the amount of the value of this timber.

December 27th, 1880, the Court discharged the rule.

The defendant then appealed, assigning as error the discharge of the rule.

*Ball & Thompson* for the appellant.

The treasurer is required to make and execute a deed to the purchaser, in fee simple, for all the estate and interest in the land that the real owner had at the time of the sale. The purchaser is required to pay the taxes and costs, and is liable to a suit therefor by the treasurer if he neglects to do so. The surplus bond which he gives is a lien upon the land from the date of the deed, and it belongs to the owner of the land at the time of the sale—taking the place of the land so far as those interested therein at the time of the sale are

[Woodland Oil Company *v.* Lawrence.]

concerned. It is true the title given by this sale and deed is not absolute until the time allowed by law for the owners to redeem has expired, and his failure to redeem. It is an inchoate, inceptive, incomplete title: Morrison *v.* Wurtz, 7 Watts, 438 ; Shalemiller *v.* McCarty, 5 Smith, 186.

But it is a title nevertheless. A sheriff's deed upon its acknowledgment relates back to the day of sale: Hoyt *v.* Koons, 7 Harris, 277 ; Morrison *v.* Wurtz, 7 Watts, 438.

When the owner commits waste thereon it is upon the implied condition that he will perform his duty and redeem the land. Equity will be satisfied with nothing less. The attempt to strip the land of its value, and then enforce the contract against the treasurer's vendee is against conscience. The bond represents the land sold, and if the purchaser did not get all he bargained for, through the fault of the appellees, the bond should be reduced accordingly, for the purchaser is entitled to the advantages of his bargain. The reason is stronger where one party, as the purchaser here, must stick to his contract, while the other may at his option avoid it by redeeming. The right to recoup seems to come fully within the principle of the numerous cases decided upon the subject: Harper et al. *v.* Kean, 11 S. & R., 280 ; Shaw *v.* Badger, 12 S. & R., 275 ; Hubler *v.* Tamney, 5 Watts, 51 ; Hunt *v.* Gilmore, 9 Sm., 450.

*B. J. & A. B. Reid,* and *Samuel D. Irwin,* for the appellees.

The question in this case is, Did the inceptive title of the purchaser at tax sale, when it became absolute on failure of the owners to redeem within the two years, so relate back to and take effect from the date of sale as to make the owner's intermediate use of the land unlawful or tortious which was not so when exercised ?

This question is fully answered by Justice THOMPSON, delivering the opinion of this Court in Shalemiller *v.* McCarty, 5 P. F. Smith, 188.

The argument from the supposed inequity and hardship to the purchaser of such a construction of the act is untenable, as the purchaser at a tax sale is bound to know the law and the rights of the owner: Dietrick *v.* Mason, 7 P. F. Smith, 42 ; Crawford *v.* Stewart, 2 Wr., 39.

OCTOBER 31ST, 1881.—PER CURIAM : The timber upon the land was cut by the owners before the purchaser at the tax sale had executed the surplus bond. Until that had been done he had no title whatever. They had the ownership, and the right to the full enjoyment of the land and the timber. How it would have been had the timber been cut

[Nesbit *v.* Clarke.]

after the bond had been given and accepted by the owners, it is not necessary here to decide. As to the owners, *non constat*, that the bond would ever be given and the title perfected.

Order affirmed and record remitted.